UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
MICHAEL J. KEARINS, as successor in
interest to PINNACLE INTERIOR
ELEMENTS, LTD.,

                                Plaintiff,

        -against-

PANALPINA, INC.,

                                Defendant.
------------------------------------------------------X

**NOT FOR PUBLICATION**

**SUMMARY ORDER**

10-CV-1198 (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

      Michael J. Kearins ("Plaintiff"), as successor in interest to Pinnacle Interior Elements, Ltd. ("Pinnacle"), brought this action against Panalpina Inc. ("Defendant") asserting claims for breach of fiduciary duty (count I), fraudulent inducement (count II), negligent misrepresentation (count III), and negligence/gross negligence (count IV). On August 15, 2011, Defendant moved for summary judgment on all of Plaintiff's claims. The Court granted Defendant's motion for summary judgment in part and set a trial date for all remaining claims.

      Now before the Court is Defendant's motion in limine to exclude the testimony of Plaintiff's expert, Barry L. Bell ("Bell"). For the reasons set forth below, the Court affirms its oral decision granting Defendant's motion in part.

## BACKGROUND

      A more thorough recitation of the facts is contained in the July 15, 2012 supplemental opinion and the April 1, 2013 summary order. (Dkt. Nos. 57, 65.) The Court assumes familiarity with the underlying facts and repeats only those facts relevant to the exclusion motion.

On June 28, 2013, in advance of trial, Defendant filed a motion in limine to exclude Bell's expert testimony concerning: (1) Pinnacle's lost profits and diminution in value; and (2) Pinnacle's incremental costs. (Dkt. No. 76 at 3-7.)

At the final pretrial conference the Court granted Defendant's motion with respect to lost profits and diminution in value in a ruling on the record, but denied Defendant's motion with respect to incremental costs. (*See* Dkt. Entry dated 07/02/2013.) At Plaintiff's request, the Court permitted additional briefing on the lost profits and diminution issue, but did not modify the exclusion ruling. (*Id.*) On July 8, 2013, Plaintiff filed a supplemental opposition to Defendant's motion. (Dkt. No. 84.) Defendant replied on July 11, 2013. (Dkt. No. 87.)

## DISCUSSION

Under New York law, it is well-settled that plaintiffs in fraud actions are not entitled to recover damages for lost profits. *See Lovely Peoples Fashion, Inc. v. Magna Fabrics, Inc.*, 95-CV-8450 (AGS) (THK), 1998 WL 422482, at *7 (S.D.N.Y. July 22, 1998); *see also Kregos v. Assoc. Press*, 3 F.3d 656, 665 (2d Cir. 1993); *PdP Parfums de Paris v. Int'l Designer Fragrances, Inc.*, 901 F.Supp. 581, 585 (E.D.N.Y. 1995). This is because damages for fraud must be "the direct, immediate, and proximate result" of the fraudulent misrepresentation. *Kregos*, 3 F.3d at 665; *see also Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 307-08 (2d Cir. 1986).

Instead, "[t]he true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996) (quoting *Reno v. Bull*, 226 N.Y. 546, 553 (N.Y. 1919)). Damages should "compensate plaintiffs for what they lost because

of the fraud, not to compensate them for what they might have gained." *Lama*, 88 N.Y.2d at 421 (citations omitted). The rationale for this rule is that "the value to the claimant of a hypothetical lost bargain is too undeterminable and speculative to constitute a cognizable basis for damages." *Starr Found. v. Am. Int'l Grp., Inc.*, 76 A.D.3d 25, 29 (N.Y. App. Div. 2010) (citations and quotations omitted).

Plaintiff argues that he is entitled to recover Pinnacle's lost profits and diminution in value to put him "in the position he would have been had Pinnacle not contracted with Panalpina." (Dkt. No. 77 at 6.) Plaintiff seeks the damages "Pinnacle suffered as a result of lost sales and customer relationships after it was subjected to heightened [customs] scrutiny" as a result of Panalpina's allegedly tortious actions. (*Id.*) Specifically, Plaintiff argues that Panalpina's errors caused Pinnacle to divert its attention "from the functions that [] led to [its] success" (Dkt. No. 76, Exh. B at 9), which led to lost profits, diminished future sales and profits, and ultimately caused a diminution in Pinnacle's value (*Id.* at 10-14.). These damages are quantified in Bell's report and would presumably be offered to the jury through his testimony.

To support the contention that he is entitled to lost profits and diminution in value, Plaintiff chiefly relies on two cases where lost profits were awarded for fraudulent inducement. *Cayuga Harvester Inc. v. Allis-Chalmers Corp.*, 95 A.D.2d 5, 23-24 (N.Y. App. Div. 1983) (holding that "profits that plaintiff would normally receive from its corn crop if sold at market value" were recoverable in a fraudulent inducement action when the loss of those profits "flow[] from" the purchase of machinery whose "continued malfunction result[ed] in the destruction of the corn"); *Hotaling v. A. B. Leach & Co. Inc., et al.*, 247 N.Y. 84, 92-93 (N.Y. 1928) (awarding

3

losses greater than the difference between purchase price and value of a financial instrument in a case where plaintiff was fraudulently induced to buy and hold a bond).

As an initial matter, the allegedly fraudulent act at issue in this case, an inducement to enter a customs brokerage relationship, is factually dissimilar to an inducement to purchase a defective corn harvester. Further, the time between the fraudulent act from the injury in this case is far greater than in *Cayuga*. Here, approximately three years elapsed between the fraudulent inducement and the injury, whereas in *Cayuga* the act and injury occurred during one harvest season. *Cayuga Harvester Inc.*, 95 A.D.2d at 7.

As for *Hotaling*, although the time period between the initial fraudulent inducement and injury spanned several years, the plaintiff in that case was fraudulently induced to continue to hold a bond after the initial fraud. *Hotaling*, 247 N.Y. at 92-93 ("As long as the fraud continued to operate and to induce the continued holding of the bond, all loss flowing naturally from that fraud may be regarded as its proximate result."). While Plaintiff also alleges that Defendant concealed a continuing fraud, he does not show that Pinnacle's lost profits and diminution in value causally flow from the alleged fraudulent inducement.

In particular, Plaintiff avers that Pinnacle lost customers and orders because its attention was diverted to resolving Defendant's customs errors. However, Bell's report explains that customers left Pinnacle largely because of its "lack of innovation and price competitiveness." (Dkt. No. 76, Exh. B at 9.) And Plaintiff does not allege that the customs errors affected Pinnacle's innovation or pricing other than by diverting its employees' attention from the business. Losses incurred due to diverted attention are not recoverable in an action for fraudulent inducement. *Goldberg,* 792 F.2d at 307-308 (holding that a doctor was not entitled to recover

"income lost during [his] defense of [] malpractice lawsuits" for injuries caused by a product he was fraudulently induced to buy.). Therefore, Plaintiff has not shown that any lost profits or diminution in value flow directly from Defendant's fraudulent inducement.

Moreover, the *Hotaling* court acknowledged that the out-of-pocket rule is the typical measure of damages for a fraudulent inducement action, and that it deviated from this rule because it would leave plaintiff without any recovery at all. *Hotaling,* 247 N.Y. at 90. In effect, *Hotaling* is "an exception" to the out-of-pocket rule, applicable in limited circumstances.[1] *Cont'l Cas. Co. v. PricewaterhouseCoopers LLP*, 15 N.Y.3d 264, 271-272 (N.Y. 2010); *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 794 F.2d 763, 766 (2d Cir. 1986) ("[*Hotaling*] did suggest that some flexibility was appropriate with respect to the out-of-pocket rule, but it involved a situation in which the strict application of the out-of-pocket rule would have denied the plaintiff any remedy at all."). In contrast, if Plaintiff proves Defendant fraudulently induced Pinnacle to enter into a customs brokerage relationship he will not be deprived of a recovery, including possible incremental damages as indicated in Bell's report.

In short, the weight of the authority holds that the out-of-pocket rule does not allow recovery of lost profits for a fraudulent inducement, and Plaintiff has not convinced the Court that it should deviate from this rule. *See Kregos*, 3 F.3d at 665; *Lovely Peoples Fashion, Inc.,* 1998 WL 422482, at *7; *PdP Parfums de Paris,* 901 F.Supp. at 585; *Cont'l Cas. Co.,* 15 N.Y.3d at 271; *Lama*, 88 N.Y.2d 413, 421; *Reno*, 226 N.Y. at 553; *Kaddo v King Serv.,Inc.*, 673 N.Y.S.2d 235, 237 (N.Y. App. Div. 1998). The out-of-pocket rule was designed to avoid

---

[1] The Court has reviewed all other authority submitted by Plaintiff and finds those cases similarly inapposite.

awarding undeterminable and speculative damages, and Plaintiff has not shown that its lost profits and diminution in value were the direct, immediate, and proximate result of the allegedly fraudulent misrepresentation. Without such limitation, there would be little distinction between the measure of damages for a fraudulent inducement and a breach of contract, thereby blurring the lines between the two causes of action. Plaintiff has also failed to show that this case falls within any exception to the out-of-pocket rule. Thus, Plaintiff cannot recover these damages under its fraudulent inducement theory.

Accordingly, the Court affirms its initial ruling excluding Bell's testimony as to Pinnacle's lost profits and diminution in value as irrelevant under FED. R. EVID. 401.

**SO ORDERED.**

**Dated: July 12, 2013**
      **Brooklyn, New York**

*Ramon E. Reyes, Jr.*
_____
**Ramon E. Reyes, Jr.
United States Magistrate Judge**